IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**CONNIE A. WICKLINE,**

    **Plaintiff,**

v.                                    **CASE NO. 2:12-cv-03523**

**MICHAEL J. ASTRUE[1],**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are the Complaint (ECF No. 2), a Brief in Support of Judgment on the Pleadings (ECF No. 10) and a Brief in Support of the Defendant's Decision (ECF No. 11).

Plaintiff, Connie A. Wickline, filed applications on November 6, 2008 (Tr. at 162-167). In both applications, Complainant alleged disability beginning October 10, 2008.  The claims were denied initially and upon reconsideration (Tr. at 84-85, 89-91). Claimant filed a written request for hearing on October 2, 2009 (Tr. at 106-107).  A hearing was held on August 3, 2010,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

1

in Charleston, West Virginia. In the Decision dated August 27, 2010, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to benefits (Tr. at 11-30).

On September 17, 2010, Claimant requested a Review by the Appeals Council (Tr. at 7). On March 4, 2011, the Appeals Council notified Claimant via letter that the record will be held in abeyance for 25 days to allow Claimant to submit more evidence or a statement about the facts and the law in the case (Tr. at 158). On March 15, 2011, Claimant submitted a Summary of Arguments (Tr. at 258-260). Claimant's submission was made part of the record by Order of the Appeals Council on May 22, 2012 (Tr. at 5). Notice of Appeals Council Action dated May 22, 2012, notified Claimant that her request for review was denied because the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). On July 20, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is

whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 13). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of restless leg syndrome, chronic obstructive pulmonary disease (COPD)/asthma/dyspnea, obesity, bipolar disorder, posttraumatic stress disorder and borderline intellectual functioning (Tr. at 13). At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 19). The ALJ then found that Claimant has a residual functional capacity ("RFC") for light work, reduced by nonexertional

limitations[2] (Tr. at 21). As a result, Claimant cannot return to her past relevant work (Tr. at 27). Nevertheless, the ALJ concluded that Claimant could perform jobs such as mailroom clerk, rental clerk and order caller (Tr. at 28). On this basis, benefits were denied (Tr. at 29).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

---

[2] Claimant must be allowed to sit or stand at will provided she is not off task more than 10 percent of the work period. She may occasionally climb ramps and stairs, bend, balance, stoop, kneel, crouch and crawl. She may never climb ladders, ropes or scaffolds. She must avoid concentrated exposure to extreme cold and heat and must avoid even moderate exposure to irritants, such as fumes, odors, dusts, gases, chemicals and poorly ventilated spaces (Tr. at 21).

Claimant's Background

Claimant was forty-nine years old at the time of the ALJ's decision (Tr. at 40). Claimant has a general equivalency diploma (GED) (Tr. at 43). She has a work certificate as a welder (Tr. at 27, 68). She previously worked as a certified nursing assistant from 1997 to 2002 (Tr. at 195). From 2002 to October 2008, Claimant worked at Job Corp as a maintenance worker. (*Id.*)

The Medical Record

On November 23, 1973, Claimant was twelve years old. She was administered intelligence testing, obtaining a verbal IQ of 70, a performance IQ of 76 and a full scale IQ of 70 (Tr. at 326). Claimant has received certification as a nursing assistant and in welding (Tr. at 68, 195, 273). She worked for five years at a nursing home as a certified nursing assistant and was a maintenance worker for six and one-half years (Tr. at 273).

The record includes treatment notes dated April 23, 2008, from Kurt. M. Nellhaus, M.D., stating Claimant's past medical history includes depression (Tr. at 261). Dr. Nellhaus' impression was that Claimant suffers from COPD (Tr. at 263). The ALJ found that Claimant's COPD is a severe impairment (Tr. at 1).

In October 2008, Claimant reported her legs were restless, causing difficulty sleeping. Louann Munday, a nurse practitioner at Process Strategies, evaluated Claimant on November 21, 2008 (Tr. at 271-274). Ms. Munday prescribed Claimant a prescription of Requip to treat Claimant's restless legs. Notes from Process Strategies Outpatient Clinic state that the Requip had helped with Claimant's restless legs (Tr. at 276). The ALJ found that Claimant's restless leg syndrome is a severe impairment (Tr. at 15).

5

Claimant reported previous cyst removal twice under her tongue (Tr. at 272). There is no evidence of further complaints or treatment. The ALJ found that Claimant's history of having a cyst removal from her tongue twice did not constitute a severe impairment. Claimant is 5'5" in height and weighed 247 pounds as of April 23, 2009. Claimant complained of back pain. The undersigned found the Claimant's obesity is a severe impairment. (*Id.*)

Notes from Process Strategies Outpatient Clinic range from 2005 to 2008 (Tr. at 275-288). Claimant sought treatment at Process Strategies beginning on May 18, 2005. Notes from May 18, 2005, state that Claimant was not having suicidal thoughts although she admitted she was staying depressed and having mood swings (Tr. at 287, 288). Claimant informed Ms. Munday during the Outpatient Clinic visit that when Claimant feels an anxiety attack coming on, she takes a Benadryl and a Tylenol and "that takes care of it" (Tr. at 286). In the Outpatient Clinic notes on June 2, 2005, Claimant reported that she was feeling better, her mood swings were gone, she had energy and her attitude was better. Claimant had not had any suicidal thoughts and felt a lot less depressed and anxious. Claimant reported that she was going to work and felt productive and motivated. She had mowed grass and had a cookout for her family to come visit (Tr. at 283).

On June 30, 2005, Claimant reported that she felt "wonderful" and had no mood swings. Claimant reported her energy had increased. She was not depressed and had not lost her temper. She stated "the medicine is great," referring to the Cymbalta she was prescribed. Ms. Munday noted that Claimant was alert and well-groomed. Notes quote Claimant as saying "I don't have depression, I don't get angry." Claimant stated she was taking more pride in her home and getting along better with friends (Tr. at 283-287).

Claimant did not show up for her August 5, 2005, appointment (Tr. at 284). On August 11, 2005, Claimant reported that she had not had any temper outbursts or suicidal thoughts. (*Id.*) On September 2, 2005, Claimant was tearful and depressed. Her energy was low (Tr. at 281). She did not have suicidal thoughts. She felt fatigued and had not been productive. Claimant's dosage of Cymbalta was increased. (*Id.*) On September 9, 2005, Claimant reported that her sleep had improved, but she was still depressed and having erratic mood swings (Tr. at 282). She had not had any temper outbursts or suicidal thought. (*Id.*)

On October 4, 2005, Notes from Process Strategies Outpatient Clinic state that Claimant was not having mood swings, did not feel depressed and was not having "crying spells." Claimant reported that she had been "real productive" and was sewing 6 new scrub outfits for her partner (Tr. at 280). Ms. Munday noted Claimant's mood was good. Claimant was looking forward to the holidays and decorating the house. She stated she wanted to take a heating and cooling class (Tr. at 280).

Claimant cancelled her appointment with Process Strategies Outpatient Clinic on October 13, 2005 (Tr. at 279). Claimant rescheduled her appointment that was set for February 9, 2006. Claimant did not show up for her February 15, 2006, appointment, nor her February 16, 2006, appointment. (*Id.*) Claimant did not show for her August 4, 2006, or September 12, 2006, appointments (Tr. at 278). Ms. Munday's notes for Claimant's February 20, 2006, clinic visit stated that Claimant's mood was good, she was not depressed, had not felt panicked and had no problems to discuss. Claimant reported her amount of sleep, energy and concentration had increased (Tr. at 277). Claimant stated her relationship with her partner was doing well and that she was working on fixing up an old Volkswagen bug. (*Id.*)

7

On April 14, 2006, Claimant did not show up for her appointment. On May 12, 2006, Claimant reported that her mood was good and she had not felt depressed or panicked. Claimant had not had any suicidal thoughts. She was still working on restoring the old Volkswagen bug. Claimant had planted a garden and stated "she's doing things she hasn't done in years." (*Id.*)

Randall W. Peterson, MD, of Putnam Family Practice Associates, Inc., completed Claimant's Disability Management Solutions Medical Request Form for Claimant's request for medical leave of absence from her employer (Tr. at 386-388). On the request form, Dr. Peterson stated that he first treated Claimant on August 7, 2008. Dr. Peterson filled out the form stating Claimant was restricted from work until she can be seen by a psychiatrist for her depression. Dr. Peterson stated on the form that Claimant could return to work full time on September 7, 2008 (Tr. at 388). Dr. Peterson also completed a Certification of Health Care Provider Form for Medical Leave for Claimant (Tr. at 389). On this form Dr. Peterson stated that Claimant should be on medical leave from work beginning August 4, 2008, to September 15, 2008. (*Id.*)

On October 28, 2008, Claimant reported to Process Strategies Outpatient Clinic that Requip was helping with her restless leg syndrome. Ms. Munday noted that Claimant was well groomed and alert. Claimant stated that on Thursday and Friday, she felt like she was having a "meltdown" and planned to overdose on some medications she stole from a girlfriend but ultimately didn't take them (Tr. at 276).

During the Comprehensive Psychiatric Evaluation on November 21, 2008, Ms. Munday noted during the mental status examination that she "gave [Claimant] four words but she didn't try to learn them. Intelligence appeared to be in the average range." Claimant stated during the evaluation that she "quit her job a month and a half ago." (Tr. at 271- 273) Ms. Munday's

diagnosis was that Claimant suffers from bipolar disorder, posttraumatic stress disorder and depression. (*Id.*)

An Adult Mental Profile dated March 16, 2009, was created on Claimant by the West Virginia Disability Determination Service (Tr. at 333-338). Tracy P. Smith, a Licensed Psychologist, created the Adult Mental Profile on Claimant. The profile states "The claimant indicated she was applying for disability because, 'I can't handle a job anymore. I can't handle stress; no patience for anything'" (Tr. at 333). The history of the present illness stated the onset of the present illness was in 2008. It interfered with work so she took a medical leave of absence from her job in September 2008. She reported her disability date as October 2008, which is also when she quit her job. Claimant did not attempt to return to work (Tr. at 334). Claimant reported symptoms of poor memory, depression, increased sleeping, anger, temper, anxiety and suicidal ideations. (*Id.*)

The Adult Mental Profile stated Claimant dropped out of school in the 11th grade.[3] She had poor grades and attended special education classes. She received a certificate in welding after taking welding classes for 22 months. Claimant has a driver's license and is able to drive herself (Tr. at 335). Claimant scored poorly during the mental status examination in the Profile's section regarding judgment. The Profile stated that it "is not considered to be a valid assessment of ability due to lack of effort." (*Id.*) In the memory assessment portion of the mental examination, it is stated that Claimant's efforts were questionable (Tr. at 336). The profile stated that Claimant's results for concentration evaluation "are considered to be invalid." (*Id.*) In the IQ test, Claimant scored a 65 in verbal IQ, 68 in performance IQ and 63 in full scale IQ. Again, the results were considered to be invalid due to questionable effort provided by Claimant. The

---

[3] Claimant has received her GED.

psychometrician's observation was that the claimant was not putting forth adequate effort, that she was not attempting to do much of the assignments given to her and was quitting very easily. (*Id.*)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in finding that the Claimant did not meet the requirements of Listing 12.05(c) when the medical evidence includes a verbal IQ of 65, a performance IQ of 68 and a full scale IQ of 63; as well as a physical or mental impairment imposing additional and significant work related limitations. Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 10) asserts that the record supports a diagnosis of mild retardation based on IQ testing on November 23, 1973, and on March 16, 2009.

The Commissioner argues that substantial evidence supports the ALJ's finding that Claimant has not met her burden of proving that her impairment meets or equals the requirements of listing 12.05(c) and that Claimant failed to demonstrate that she is unable to engage in any substantial gainful work.

The ALJ's hearing was conducted on August 3, 2010. The medical background referenced above was presented through testimony or documentation. In addition, Mary Buban, Psy. D., testified as a medical expert. Dr. Buban reviewed the evidence of the record and heard Claimant's testimony (Tr. at 66-67). Dr. Buban opined there was sufficient evidence to make a determination regarding the claimant's mental impairments. Claimant's seventh grade IQ levels were 70 or above. Claimant has a work certificate as a welder. Her most recent IQ test levels were considered invalid due to poor effort. Claimant has been diagnosed with bipolar disorder however, there is no evidence of manic phases (Tr. at 27). She has been diagnosed with

posttraumatic stress disorder by history but is not being treated for this condition. Dr. Buban opined Claimant's condition does not meet or equal the criteria of a listing 12.05(c) in Appendix 1.

A vocational expert (VE) testified at the administrative hearing (Tr. at 74). Patricia Posey, VE, testified that Claimant's past work as a certified nursing assistant involved semi-skilled work. VE Posey also testified that Claimant's past relevant work experience as a maintenance worker involved semi-skilled work. The ALJ asked the VE to assume a hypothetical individual of Claimant's age, education and experience, who was restricted to light work with a sit/stand option at will; who could occasionally climb ramps/stairs, bend, balance, stoop, kneel, crouch and crawl; who could never climb ladders, ropes, or scaffolds; who must avoid concentrated exposure to extreme cold/heat; who must avoid even moderate exposure to irritants such as fumes, odors, dusts, gases, chemicals, and poorly ventilated spaces; who can perform simple to moderately detailed work tasks involving simple instructions in a low-stress work environment; and who may have frequent contact with supervisors and co-workers and occasional contact with the public (Tr. at 75-76). VE Posey testified that in consideration of the ALJ's hypothetical, Claimant could not perform her past relevant work but Claimant could perform other jobs in the regional or national economy (Tr. at 76). VE Posey testified that the hypothetical individual could perform work as a mailroom clerk, rental clerk and order caller (Tr. at 76-77).

The ALJ then asked VE Posey if a hypothetical person with the exact same limitations but at the sedentary level of exertion would be capable of performing gainful employment regionally or nationally. VE Posey testified that said hypothetical person could perform work as

an order caller, surveillance systems monitor and document preparer (Tr. at 77). VE Posey's testimony was consistent with the Dictionary of Occupational Titles (Tr. at 78).

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012). Fifth,

if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

Relying on Claimant's significant history of work experience, GED, CAN and welding certifications, IQ examinations, residual functional capacity, independent medical professionals' testimonies and the testimony of the vocational expert, the ALJ determined claimant did not satisfy the findings required to demonstrate mental retardation under Listing 12.05(c). The ALJ found based on the above conclusions that Claimant's functional limitations were moderate restriction in activities of daily living, moderate difficulties with social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation (Tr. at 26). The ALJ acknowledged that there are many inconsistencies in the record (Tr. at 25). Additionally, the ALJ noted that "the psychological records in the file do not support the Claimant's extreme allegations" (Tr. at 23). The ALJ complied with the applicable regulation cited above in determining that Claimant did not suffer from mental impairment Listing 12.05 and his findings are supported by substantial evidence.

Claimant asserts that the ALJ erred in finding that she did not meet the requirements of Listing 12.05(c). (ECF No. 10) 20 C.F.R. 404 Subpart P, Appendix 1 lists the criteria necessary for the Claimant to demonstrate her impairments are so severe that she qualifies as disabled.

Listing 12.05 deals with mental disorders. Listing 12.05 addresses the disability of mental retardation. Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. 404 Subpart P, Appendix 1, Listing § 12.05. In order to satisfy the listing requirements for mental retardation, Claimant must meet the Listing description and one of the following four prongs :

(a) Mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning included, OR

(b) A valid verbal, performance, or full scale IQ of 59 or less, OR

(c) A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work related limitation of function, OR

(d) A valid verbal, performance or full scale IQ of 60-70 resulting in at least one of the following: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence, or pace; OR (4) Repeated episodes of decompensation, each of extended duration.

Claimant argues the ALJ erred in finding that she does not satisfy prong (c). Listing 12.05 prong (c) requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Claimant relies upon her IQ scores from 1973.

As this Court explained in Mann v. Astrue, 2008 WL 906346, *11 (S.D. W. Va. March 31, 2008):

> [O]ne of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00; *see also, The Merck Manual of Diagnosis and Therapy* 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds.; 17th ed. 1999)(defining mental retardation as "significantly subaverage intellectual quotient with related limitations in two or more of the following: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work."). Also, according to the *Diagnostic and Statistical Manual of Mental Disorders*, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. *Id.* at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting.

While Listing 12.05's introductory paragraph may not require "a formal diagnosis of mental retardation," *Maresh v. Barnhart,* 438 F.3d 897, 899 (8th Cir. 2006), Claimant does not meet any part of the introductory requirement of Listing 12.05(c). Claimant has not shown "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period, i.e., before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Claimant asserts the onset date of her disability was October 2008, the same time Claimant quit her job. Claimant's age was older than 22 in October 2008.

In *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) this Court held that evidence was sufficient to support the ALJ's conclusion that claimant had no deficits in adaptive functioning where, among other things, claimant worked several jobs and performed a variety of tasks which would be expected to be beyond the capacity of a mentally retarded person that was attending school to obtain a GED. In the present case, Claimant obtained her GED, possesses a driver's

license and drives, reads, writes, goes shopping and sews scrubs for her partner. She has worked as a certified nurse practitioner and is certificate in welding. Tracy P. Smith, Licensed Psychologist, opined that claimant was capable of managing her own finances (Tr. at 338).

Credibility Determination

The ALJ found that Claimant's psychological allegations, as well as her physical limitations, were not credible (Tr. at 22-24). The ALJ explained his reasons for finding Claimant not entirely credible; including the objective findings, treatment notes, her lack of effort in recent intelligence testing, inconsistencies in the record and her attempts to greatly minimize her self-reported daily activities[4] (Tr. 22-26).

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections,

---

[4] District Court may not decide upon credibility of witnesses. *See*, *Roper v. Secretary of Health and Human Services*, 769 F. Supp. 243(N.D. Ohio 1990).

identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   August 16, 2013.

_____
Dwane L. Tinsley
United States Magistrate Judge